STEPHEN J. WINDHORST, Judge.
|2Pefendant was charged with two *1201 counts[1] of possession of a firearm during the commission of a crime of violence[2] in violation of La. R.S. 14:95(E). Defendant was tried by jury and found, on count one, guilty of the responsive verdict of attempted possession of a firearm during the commission of a crime of violence in violation of La. R.S. 14:27:95(E), and not guilty on count two. Defendant was sentenced to 90 days at hard labor with credit for time served. Defendant now appeals.
The following facts were adduced at trial. At approximately 2:80 p.m., on August 31, 2009, Mr. Robert Goertz, an off-duty Louisiana State Trooper, and his wife, Mrs. Jeanette Goertz, were driving eastbound in the left lane on Jefferson Highway in Harahan, Louisiana. While driving, Mr. Goertz observed in his Rrearview mirror a pickup truck approaching them from the rear at high speed. Anticipating a collision, he told his wife, “Hold on. It looks like we’re getting hit.” But the truck swerved around them to the right, nearly sideswiping the couple, cut back in front of them, and came to a stop at a red light at Folse Street. As Mr. Goertz approached the truck from behind, Mrs. Goertz noted the license plate number before the truck drove through the red light. The light turned green within seconds, so Mr. Goertz continued down Jefferson Highway behind the truck until the truck made an abrupt U-turn. As it passed the Goertzs in the opposite direction, the driver pointed a gun out of his open window in their direction. This prompted Mr. Goertz to tell his wife to get down in the backseat. Mrs. Goertz jumped in the backseat and called 911'. Mr. Goertz then made a U-turn to follow the truck, to keep it in front of him so that he could relay details of its location to the police. The truck continued to make U-turns in an effort to try to get behind him, so Mr. Goertz continued to make U-turns to keep the truck in front of him. Then, after a series of these U-turns, the truck made an “S” maneuver, in which it approached the Goertzs head-on, and threatened to collide with them, before cutting back out of their path.
Moments later, Mr. Goertz noticed a marked Jefferson Parish Sheriffs unit parked on the shoulder of the road and stopped to notify the officer of the incident. The officer instructed him to lodge a complaint at the Harahan Police station. As Mr. Goertz headed towards the police station, the truck reappeared on the highway from a side street and began following the Goertzs. This prompted Mr. Goertz to pull into the Winn-Dixie parking lot at Folse Street and Jefferson Highway. The truck followed them into the parking lot, so Mr. Goertz exited the lot and continued towards the police station. When they arrived at the station, Mr. Goertz |4was informed that he was needed back at the Winn-Dixie. He returned to the Winn-Dixie where he identified the vehicle and the individual driving the vehicle.
Deputy Shane Rivolo of the Jefferson Parish Sheriffs Office assisted in making the traffic stop of the vehicle. Defendant was cooperative and informed the officer that there was a firearm in the vehicle. A Ruger semi-automatic pistol and two loaded magazines were located in the center console of the vehicle.
*1202 In defendant’s first assignment of error, he contends that his right against double jeopardy was violated when he was prosecuted for a violation of La. R.S. 14:95(E) based on an underlying felony of aggravated assault in violation of La. R.S. 14:37. Defendant argues that because the state was required to use the same evidence to prove violations of La. R.S. 14:95(E) and La. R.S. 14:37, his right against double jeopardy was violated.
The state responds that relief should be denied on the ground of law of the case since the panel previously denied relief on this issue in a pre-trial supervisory writ application. Alternatively, the state contends that defendant’s argument has no merit.
The record reflects that defendant raised his double jeopardy claim in a pretrial motion to quash, which was denied by the trial court. The panel then denied defendant’s writ application, and the Louisiana Supreme Court denied writs thereafter. State v. Wallace, 11-508 (La.App. 5 Cir. 5/27/11) (unpublished writ disposition), writ denied, 11-1355 (La.9/30/11), 71 So.3d 292.
In denying defendant’s writ application, the panel determined that defendant was not charged with violating La. R.S. 14:37. State v. Wallace, 11-508 (La.App. 5 Cir. 5/27/11) (unpublished writ disposition). Rather, “[t]he bill of information clearly states that [defendant] ‘violated R.S. H:95 E in that he did possess a handgun while in the commission of R.S. 14:37.’ ” (Emphasis as in writ ^disposition). Id. The panel found that LSA-R.S. 14:37 “is only listed in the bill to describe what offense [defendant] committed while possessing or using a handgun. Thus, no double jeopardy violation exists.” Id.
Under the doctrine of “law of the case,” an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Pettus, 11-862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240 (citation omitted). The law of the case doctrine is discretionary. Id. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. Id.
In the present case, our review of the record reveals no new evidence was introduced that affects the double jeopardy analysis. Defendant was brought to trial on two counts of violating La. R.S. 14:95(E). He was convicted of the responsive verdict of an attempted violation of La. R.S. 14:95(E), on only one count and found not guilty as to the second count. There is nothing to suggest that the panel’s determination on defendant’s writ application was patently erroneous or produced unjust results. Accordingly, we deny relief on the basis of law of the case.
In his second assignment of error, defendant argues that the trial court erred in denying him the opportunity to present the testimony of a juror regarding improper jury considerations. In support of his motion for post-verdict judgment of acquittal, defendant filed a motion to adduce testimony from a juror, which the trial court heard and denied on May 3, 2012. The defense objected and now appeals this denial.
In response, the state contends that the trial court did not err in denying defendant’s motion to adduce juror testimony because Louisiana’s jury shield law prohibits such testimony and the exceptions to the law are not applicable here.
|f,In defendant’s motion to adduce testimony, he alleged that after his trial, one of *1203 the jurors, Ms. Lorraine Broderick, contacted defense counsel to express concerns with the verdict and the jury’s deliberations. Ms. Broderick informed counsel that the jury returned a verdict of attempted illegal possession of a firearm because the jury believed defendant was a convicted felon and wanted to punish him for being a felon in possession of a firearm. Ms. Broderick also filed into the record a sworn affidavit, in which she states that during a break in the trial, one juror informed the other jurors that because defendant had been charged with illegal possession of a firearm, he was a convicted felon. Her affidavit contends that two other jurors also stated that they recognized defendant from The Times-Picayune crime reports. The affidavit also provides that during deliberations, the jurors all agreed that neither Mr. nor Mrs. Goertz were actually concerned with being shot by defendant, and that the jury returned the conviction based on the belief that defendant was a convicted felon.
In denying the motion, the trial court stated:
I have a real problem with bringing jurors in, because I do not want to hear from one juror without hearing from the others, and I have a real problem with bringing jurors in to question them as to what they did in their deliberations. I feel that that goes beyond what we’re asked to do.
I mean, I understand your argument, that this is what your belief is, is that they believed that Mr. Wallace was a convicted felon. The verdict, as I remember it came down, they found him guilty of one count—
[[Image here]]
And an attempt was a lesser included offense under the charges. I found it to be a valid verdict. It’s not that they reached any conclusions that were beyond that which was presented. I just — I think we’d be violating the jury room.
I invite you to take it up on appeal. If they tell me that we need to have the hearing, I’ll have the hearing. But, you know, at this time, I’m denying your motion, and I’m denying the motion for post-verdict judgment of acquittal.
JjLouisiana’s jury shield provision, codified in La. C.E. art. 606(B), generally precludes inquiry into the course and conduct of a jury’s deliberations. State v. Ingram, 10-2274, p. 5 (La.3/25/11), 57 So.3d 299, 301. This shield is intended to preserve the confidentiality and finality of jury verdicts, and the confidentiality of discussion among jurors. State v. Videau, 04-923, p. 11 (La.App. 5 Cir. 3/1/05), 900 So.2d 855, 863, unit denied, 05-0841 (La. 1/9/06), 918 So.2d 1037. It provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury’s attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
*1204 The prohibition against juror testimony is not absolute, but must yield to a substantial showing that the defendant was deprived of his constitutional rights. Videau, 04-923 at 12, 900 So.2d at 863 (citations omitted).
The intent behind the jury shield provision was explained by the court in State v. Currie, 00-2284 (La.App. 4 Cir. 2/13/02), 812 So.2d 128, 136-7, writ denied, 02-0786 (La.11/15/02), 829 So.2d 421:
Historically, the law was intended to preserve the finality of jury verdicts and the confidentiality of discussions among jurors. State v. Richardson, 91,2339 (La.App. 1 Cir. 5/20/94), 637 So.2d 709; State v. Harris, 597 So.2d 163 (La.App. 2 Cir.1992). As the Supreme Court has further stated: “[N]o juror is competent to impeach the verdict of the jury on which he served. This firmly-established rule prevents jurors from impeaching their verdict by disclosure of jury deliberations or even by testimony of misconduct within the jury room.” State v. Abney, 347 So.2d 498, 502 (La.1977).
| Although not strictly held in criminal cases where, as explained above, there are additional constitutional considerations, in civil cases “affidavits and other testimony by jurors cannot be used as evidence to impeach a jury’s verdict.” Uriegas v. Gainsco, 94-1400 (La.App. 3 Cir. 9/13/95), 663 So.2d 162, 170, citing Pitts v. Bailes, 551 So.2d 1363 (La.App. 3 Cir.1989); Theriot v. Theriot, 622 So.2d 257 (La.App. 1 Cir.1993); Coleman v. Brooks, 583 So.2d 133 (La.App. 4 Cir.1991). “One reason for this rule is that if, after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would invite tampering with the jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under the sanction of oath.” Parker v. Centenary Heritage Manor, 28,401 (La.App. 2 Cir. 6/26/96), 677 So.2d 568, 574.
In this case, it is not alleged that an outside person presented evidence to the jury that was not adduced at trial. Rather defendant contends that comments made by jurors unfairly contributed to the verdict. This is exactly the situation addressed by Currie, where a juror is attempting to impeach a verdict that the jury had rendered. We find no error in the trial court’s decision to deny defendant’s motion to adduce testimony from a juror. This allegation is without merit.
In addition, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following errors.
First, we note that defendant’s sentence is illegally lenient. At the time of the offense,[3] La. R.S. 14:95(E) provided for a fine of “not more than ten thousand dollars and imprison[ment] at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence.” In addition, the pertinent portion of the attempt statute, La. R.S. 14:27(D)(3), provided that an offender “shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment | prescribed for the offense *1205 so attempted, or both.” Accordingly, defendant was eligible for no more than five years at hard labor and a fíne of no more than five thousand dollars. Defendant was sentenced to 90 days at hard labor, but was not fined.
In cases of indigent defendants, this Court has in the past declined to correct an illegally lenient sentence based on the omission of a mandatory fíne. State v. Horton, 09-250, p. 10 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 376. In this case, defendant is represented by the Louisiana Appellate Project. Since defendant is indigent, we decline to correct this omission.
Second, a review of the record reveals that the trial court failed to inform defendant of the prescriptive period for seeking post-conviction relief. Although the commitment indicates that defendant was informed of this period, the transcript indicates otherwise. Since the transcript prevails, this is an error patent. State v. Lynch, 441 So.2d 732, 734 (La.1983).
This Court has in the past corrected this error patent by way of its opinion. See State v. Ramsey, 10-333, p. 10 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42; State v. Davenport, 08-463, p. 10-11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, unit denied, 09-0158 (La.10/16/09), 10 So.3d 473. We now advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.
For the above discussed reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED

. Count one charged defendant with the offense against Mr. Robert Goertz. Count two charged defendant with the identical offense against Mrs. Jeanette Goertz, Mr. Goertz’s wife.

. It is noted that the crime of violence defendant was alleged to have committed was aggravated assault in violation of La. R.S. 14:37.

. It is well settled that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407, p. 4 (La.6/21/02), 820 So.2d 518, 520.